UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Crim. No. 5:86-cr-00010-GFVT-HAI-1 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| BILLY DENTON MCQUEEN, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |

*** *** *** ***

This matter is before the Court on two Motions for Sentence Reduction filed by

Defendant Billy Denton McQueen, Jr.  [R. 45; R. 50.]  A state inmate, Mr. McQueen asks the

Court to eliminate a federal sentence that he is set to serve upon release from state custody.  State

law views Mr. McQueen's federal detainer as a reason to deny him parole.  So, Mr. McQueen

believes that his federal sentence traps him for life in a state penitentiary, where COVID-19

threatens to complicate his underlying health issues.  Although Mr. McQueen faces a concerning

predicament, Congress does not permit the Court to entertain his motion for compassionate

release.  The Court **CONSTRUES** his second filing **[R. 50]** as a supplement to his initial paper

and **DENIES** his Motion for a Sentence Reduction **[R. 45]**.

**I**

Mr. McQueen is an inmate living in North Carolina's Nash Correctional Institution.  [R.

50 at 1.]  He is serving a life sentence, with the possibility of parole, based on state criminal

charges.  *Id.* at 4.  In addition to his state convictions, this Court adjudged Mr. McQueen guilty

of knowingly transporting firearms in interstate commerce with the intent to commit a felony and

transmitting threatening communications in interstate commerce.  [R. 37 at 1.]  The Court

sentenced him to ten years' incarceration for the first federal crime and five years for the second,

with the terms to be served consecutively.  *Id.*  Mr. McQueen will serve his federal sentence after

he is released from state custody.  *See id.*

On June 17, 2022, Mr. McQueen requested relief from his federal sentence via a form

furnished by the Administrative Office of the United States Courts for motions to vacate, set

aside, or correct a sentence by a person in federal custody pursuant to 28 U.S.C. § 2255.  [R. 45.]

Despite the preprinted title on the form, Mr. McQueen based his request on "[e]xtraordinary and

compelling reasons warrant[ing] a sentencing reduction" pursuant to 18 U.S.C. § 3582(c)(1)(A).

*Id.* at 4.  Although he is in state custody, Mr. McQueen had a reason for filing in federal court.

He explained that North Carolina state prisoners are eligible for honor grade status after fifteen

years and for parole after twenty.[1]  *Id.*  However, the detainer lodged against him for his federal

sentence renders him ineligible for either.  *Id.*

The Court construed Mr. McQueen's filing as a motion for a sentence reduction under 18

U.S.C. § 3582(c)(1)(A).  [R. 48.]  Mr. McQueen argues that the presence of COVID-19 in his

prison unit combined with his underlying disorders, such as heart disease, chronic obstructive

pulmonary disease, and fibromyalgia, have made prison exceptionally difficult for him.  [R. 45 at

4–5.]  Given the effect of his federal detainer, Mr. McQueen argues that he is trapped in a

medically unsafe environment, amounting to an extraordinary and compelling reason to grant a

sentence reduction.  *Id.*  Mr. McQueen also believes that the penological goals embodied in the

federal sentencing guidelines support a sentence reduction.  *Id.* at 6–11.

---

[1] In North Carolina, honor grade is a designation that prisoners can receive that entitles them to minimum custody requirements, including a lack of armed supervision.  Div. of Prisons, N.C. Dep't of Corrs., Handbook for Family and Friends of Inmates 68 (2010), https://www.doc.state nc.us/publications/2010Handbook.pdf.

The United States opposes any reduction to Mr. McQueen's federal sentence on both substantive and procedural grounds.  [*See* R. 49.]  Procedurally, it argues that the Court cannot reduce Mr. McQueen's sentence because he did not exhaust his administrative remedies.  *Id.* Given the complexity of the posture of this matter, the Court appointed Mr. McQueen an attorney pursuant to the Criminal Justice Act.  [R. 53 at 2.]  The matter is now fully briefed and ripe for review.  [R. 59.]

## II

Two threshold issues prevent the Court from reaching the substance of Mr. McQueen's request.  Because Mr. McQueen committed his crimes before November 1, 1987, he is ineligible for compassionate release unless the BOP moves on his behalf.  [R. 59 at 2.]  And the Government objects to his failure to exhaust his administrative remedies.  [R. 49 at 4.]  Each obstacle independently prevents the Court from reaching Mr. McQueen's argument for compassionate release.

### A

Because Mr. McQueen's offense occurred before 1987, he cannot file his own motion for compassionate release.  In 1984, Congress enacted a broad revision to the United States Criminal Code.  Comprehensive Crime Control Act of 1984, Pub. L. No. 98-473, 98 Stat. 1837, 1976 (codified as amended in scattered sections of 18 U.S.C.).  The act eliminated parole for federal offenders.  Sentencing Reform Act of 1984, Pub. L. No. 98-473, 98 Stat. 1837, 1987.  Under the prior system, the Parole Commission could release prisoners who faced medical problems and were eligible for parole.  *United States v. Jackson*, 991 F.3d 851, 853 (7th Cir. 2021) (Easterbrook, J.).  A judge could also reduce a prisoner's minimum term of incarceration prior to parole eligibility, but only on a motion from the Director of the Bureau of Prisons.  *Id.* (citing 18

U.S.C. § 4205(g))).

The 1984 reform effort streamlined the process for prisoners seeking a medical release, providing that courts can reduce a term of imprisonment based on "extraordinary and compelling reasons" that warrant a reduction, contemplation of the Section 3553(a) sentencing factors, and consideration of any applicable policy statements issued by the United States Sentencing Commission. 98 Stat. 1998–99 (codified at 18 U.S.C. § 3582(c)(1)(A)). This change repealed the former 18 U.S.C. § 4205(g) and replaced it with 18 U.S.C. § 3582(c)(1)(A) for "inmates whose offenses occurred on or after November 1, 1987 . . . ." *See* Sentencing Act of 1987, Pub. L. No. 100-182, § 2(a), 101 Stat. 1266 (subsequently modifying the effective date of the 1984 reform); *see also* 28 C.F.R. § 572.40 (2022) (delineating the applicability of Sections 4205(g) and 3582(c)(1)(A)). However, 18 U.S.C. § 4205(g) "remain[ed] the controlling law for inmates whose offenses occurred prior to that date." 28 C.F.R. § 572.40.

Congress returned to the procedure for medical release in 2018 and enacted legislation intended to increase "the use and transparency of compassionate release." First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239 (codified as amended at 18 U.S.C. § 3582(c)(1)(A)). Now, prisoners can file a motion for compassionate release rather than having to rely on the BOP to do so. 18 U.S.C. § 3582(c)(1)(A).

The question for Mr. McQueen is whether he can avail himself of these changes to federal law made after his conviction. Because his conviction occurred before November 1, 1987, the 1984 revisions do not apply to him. *See* 28 C.F.R. § 572.40. Those reforms left early release in the hands of the old system via Section 4205(g). *Id.* And the circuit courts that have considered the issue conclude that the First Step Act maintained the status quo. *See Jackson*, 991 F.3d at 853; *United States v. King*, 24 F. 4th 1226, 1229 (9th Cir. 2022).

4

For inmates whose offenses occurred before November 1, 1987, Congress continues to keep the ghost of the parole system alive and relegates their access to compassionate release to the procedures set forth in 18 U.S.C. § 4205(g). *See King*, 24 F.4th at 1229. The 1984 act kept Section 4205(g) in place for five years after the act's effective date. § 235(b)(1)(A), 98 Stat. at 2032. Congress has extended this five-year period so many times that it "has since acquired a state of permanent impermanence." *King*, 24 F.4th at 1229. Critically, Congress continues to renew Section 4205(g) for pre-reform offenders after passing the First Step Act. *See* United States Parole Commission Extension Act of 2020, Pub. L. No. 116-159, § 4202, 134 Stat. 709, 741 (extending through 2022); Further Continuing Appropriations and Extensions Act, 2023, Pub. L. No. 117-229, § 103, 136 Stat. 2308, 2309 (into 2023); *see also* 18 U.S.C. § 3551 note. Accordingly, "prisoners who . . . stand convicted of crimes that predate November 1, 1987, are subject to § 4205(g) and cannot personally move a district court for compassionate release." *King*, 24 F.4th at 1229. Mr. McQueen's motion is not properly before the Court.

**B**

Even if the First Step Act applied and Mr. McQueen could file his own motion, the Court could not offer him the relief that he seeks. The Government's objection to Mr. McQueen's failure to exhaust his administrative remedies binds the Court. Under the First Step Act, a sentence reduction must first be sought through the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A). A federal court can reduce an inmate's term of imprisonment after receiving a motion from the Director of the Bureau of Prisons. *Id.* Alternatively, a defendant can bring a compassionate release motion himself, but he must first "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on his behalf or [demonstrate] the

lapse of 30 days from the receipt of such a request by the warden of the defendant's facility . . . ." *Id.*

The First Step Act's exhaustion requirement creates a mandatory, but non-jurisdictional, rule. *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020). When properly invoked, the exhaustion requirement is binding on a court. *Id.* at 834. However, as a claim-processing rule, it can be waived or forfeited by the Government. *See id.*

Where a defendant is in BOP custody but held in a non-federal facility, "there is no warden with any authority in the federal compassionate release process to whom he could address the request that the First Step Act requires." *United States v. Levy*, No. 16-cr-270, 2020 WL 2393837, at *3 (E.D.N.Y. May 12, 2020). In this situation, the Government can waive the exhaustion requirement by agreeing that the defendant effectively has no administrative options available. *See United States v. Lebanion*, No. 6:12-cr-00026-KKC-HAI-04, 2020 WL 4809433, at *4 (E.D. Ky. Aug. 18, 2020) (the Government waived the exhaustion requirement where defendant was in BOP custody but was housed in the Laurel County Corrections Facility); *accord Levy*, 2020 WL 2393837, at *3.

Here, Mr. McQueen is in state custody and held in a state facility. The Government could waive the exhaustion requirement by agreeing that Mr. McQueen has no warden to move for compassionate release. Instead, it chose to enforce the exhaustion requirement. [R. 49 at 4.] Once invoked by the Government, the Court cannot create an equitable exception to the exhaustion requirement based on futility. *See Alam*, 960 F.3d at 835. The Court must dismiss the motion without prejudice and give Mr. McQueen the opportunity to request relief from the BOP. *See id.* at 836.

**III**

Mr. McQueen is in an unenviable position.  State law uses his federal retainer as a reason to deny him early release.  Federal law dictates that he must seek administrative relief, rather than proceeding directly in federal court.  Until he exits state custody, he does not have a clear means of seeking review from the BOP.  This gordian knot seems ripe for an equitable exception.  But the Sixth Circuit limits its district courts' ability to carve out equitable exceptions to the statutory requirements for compassionate release, when properly invoked.  *See United States v. Alam*, 960 F.3d 831, 835 (6th Cir. 2020).  Congress continues to relegate prisoners like Mr. McQueen to an old statute that does not permit him to file a motion for compassionate release on his own behalf.  Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. Mr. McQueen's Motion for Sentence Reduction **[R. 45]** is **DENIED** without prejudice;

2. Mr. McQueen's second Motion for Sentence Reduction **[R. 50]** is **CONSTRUED** as a Motion to Supplement his prior filing; and

3. Mr. McQueen's construed Motion to Supplement **[R. 50]** is **GRANTED** but he is accorded no relief.

This the is the 7th day of July 2023.

Gregory F. Van Tatenhove
United States District Judge

7